UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                                Case No. 17-cv-325-pp

JOHN GRIESER, ANN LARSON,
CATHY RIETZ, and BELINDA SCHRUBBE,

                Defendants.

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE
FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. Under that law, the court must screen the plaintiff's complaint to determine whether the plaintiff states claims with which he may proceed. In addition to filing a complaint, the plaintiff filed a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. This decision screens the complaint and resolves the plaintiff's motion.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee**

The PLRA provides that a court may allow an incarcerated plaintiff to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b).

1

On April 5, 2017, the court ordered the plaintiff to pay an initial partial filing fee of $19.06. Dkt. No. 8. The court received that amount from the plaintiff on July 31, 2017. The court will grant the plaintiff's motion to proceed without prepayment of the filing fee. The court will order the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this decision.

## II.  Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed with a claim that his civil rights were violated under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570

F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    A.    The Plaintiff's Allegations

The plaintiff explains that he suffers from a chronic back injury that periodically causes his back to go out, leaving him unable to move. Dkt. No. 1 at 3. When this happens, he is unable to leave his cell for meals or medication and must rely on the cell hall sergeant and/or health services staff to place him on lay-in or sick-cell status, so that someone will bring him his meals and medications. Id.

On January 3, 2011, the plaintiff woke in severe pain and he was unable to move. Id. The plaintiff asked an officer who walked by his cell to ask defendant Sergeant John Grieser to call the health services unit (HSU). Id. Grieser called HSU and reported the plaintiff's condition to defendant Nurse Ann Larson. Id. According to the plaintiff, Larson instructed Grieser to tell the plaintiff to fill out a health services request (HSR) and put it in the HSU mailbox. Id. The plaintiff states that, because he could not move, he was obviously unable to comply. Id. He states that Larson refused to treat him until HSU received an HSR. Id.

The plaintiff believes Larson refused to treat him at defendant Belinda Schrubbe's direction. Id. He alleges that Schrubbe has a practice of refusing to

3

treat inmates who file complaints against HSU, and he says that prior to this incident, he had filed thirty-one complaints against HSU, including one against Schrubbe. Id.

The plaintiff states that Grieser placed him on lay-in status for four days. Id. at 4. According to the plaintiff, the lay-in policy requires that HSU see an inmate on the third consecutive day of lay-in, but the plaintiff asserts that HSU never saw him, so he spent those days without any medical attention or pain treatment. Id.

Four days later, on January 7, 2011, the plaintiff came out of his cell when the meal bell rang, so he could assess his mobility and pain level. Id. The plaintiff alleges that he walked slowly and stiffly and he continued to have severe pain. Id. When he got to the sergeant's cage, he asked Grieser to call HSU, because he did not think he would make it through the weekend without medical treatment. Id. The plaintiff states that Grieser refused to call HSU. Id. He allegedly told the plaintiff that it was not an emergency (*i.e.*, a life and death situation), and instructed the plaintiff to fill out an HSR. Id. The plaintiff explained that he was in pain and would be unable to leave his cell, but, according to the plaintiff, Grieser refused to call HSU or a supervisor and instructed the plaintiff to go back to his cell. Id. The plaintiff complied, but, before doing so, he filled out an HSR and put it in the HSU box. Id.

The plaintiff states that he was unable to go to dinner that night and missed all three meals the following day, a Saturday. Id. On Sunday, the relief sergeant placed the plaintiff on lay-in status, and the plaintiff received meals in

4

his cell. Id. The next morning, the plaintiff told an officer who came by his cell that he would not be able to use his afternoon library pass and needed to see HSU. Id. at 4-5. The officer returned and, according to the plaintiff, told the plaintiff that his pass had been cancelled and he was scheduled to see HSU the following day. Id. at 5. The plaintiff states that he spent the rest of the day in bed, but later that evening decided to "painfully shuffle" to the showers because it had been several days since he had done so and he knew the hot water would help his back. Id.

The next morning, as the officer had indicated, the plaintiff was given a pass to go to HSU; he was examined by Larson. Id. Larson placed him on sick cell for eight days, gave him ibuprofen, instructed him to alternate with heat and ice, and told him to rest. Id. According to the plaintiff, Larson wrote in the chart that the plaintiff was scheduled to see the doctor for medical classification and chronic back pain management. Id.

The following day, the plaintiff states that he wrote to HSU and complained about the lack of treatment between January 3, 2011 and January 11, 2011 (when Larson saw him). Id. The plaintiff asserts that Larson received the request and forwarded it to Schrubbe. Id. Schrubbe allegedly responded that, although the plaintiff had claimed he couldn't move, security documents indicated that he had gone to take a shower. Id. The plaintiff asserts that Schrubbe then removed him from the list of inmates scheduled to see the doctor. Id.

A couple of days later, the plaintiff states that he wrenched his back as he climbed down from his bunk to go to the bathroom, causing such severe pain that he crumpled to the floor, nearly passed out and became nauseous. Id. The plaintiff explains that he also suffered shooting pains down his left leg—a new symptom. Id.

Later that afternoon, the plaintiff filed an HSR explaining how his injury had been exacerbated and that ibuprofen was not helping. Id. at 6. The plaintiff states that defendant Cathy Rietz examined him five days later, and told him to apply warm and cold compresses and to stretch and avoid sports and weightlifting. Id. The plaintiff states that she did not address his pain, but instead referred him to the nurse practitioner. Id. Nearly three weeks later, the plaintiff states that he had not received a pass to see the doctor or the nurse practitioner, so he wrote to HSU, explaining that he was still in pain, that his ibuprofen was about to run out, and that he wanted to see a doctor. Id. Nearly a month later, the plaintiff received an HSU pass to see the doctor. Id.

B. The Court's Analysis

The plaintiff alleges that all three defendants were deliberately indifferent to his serious medical need, in violation of the Eighth Amendment.

Prison officials violate the Eighth Amendment when they know of a substantial risk of serious harm to inmate health or safety and they either act or fail to act in disregard of that risk. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011).

The court will allow the plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Grieser based on his allegations that (1) Grieser failed to obtain medical treatment for the plaintiff between January 3 through January 6, 2011, when the plaintiff was in too much pain to leave his cell; and (2) Grieser refused to place him on lay-in status on January 7 and 8, 2011, despite the fact that the plaintiff was in too much pain to leave his cell to get his meals. The plaintiff does not, however, state a claim against Grieser based on his allegations that Grieser refused to call HSU upon the plaintiff's request on the morning of January 7, 2011, after the plaintiff left his cell. Grieser explained that he would call HSU only for life-and-death emergencies; short of that, inmates were required to fill out an HSR. At that point (as opposed to a few days earlier when the plaintiff was immobile), the plaintiff had left his cell and was capable of filling out an HSR and dropping it in the HSU box. The plaintiff cannot state a claim that Grieser violated his constitutional rights by requiring that the plaintiff comply with the policy for obtaining medical treatment.

The court also will allow the plaintiff to proceed on a deliberate indifference claim against Larson, based on his allegations that she refused to see the plaintiff until he completed an HSR, despite the fact that she had been informed that the plaintiff was in too much pain to leave his cell.

The court will not allow the plaintiff to proceed against Rietz based on his conclusion that she "failed to treat the plaintiff's pain." Dkt. No. 1 at 6. The plaintiff's own allegations say otherwise. The plaintiff alleges that when she

examined him, Rietz suggested cold and hot compresses, told him to stretch, told him to avoid sports and weightlifting, and referred him to a nurse practitioner for further examination. The plaintiff also alleges that, when he wrote HSU a couple of weeks later to see about his doctor appointment, he informed them that "his ibuprofen was about to run out," which implies that Rietz had given him ibuprofen. Id. The plaintiff may not have benefitted as much as he would have liked from Rietz's care, but based on these allegations, the plaintiff has not stated a claim that Rietz was deliberately indifferent to his medical needs.

Finally, the court will allow the plaintiff to proceed on a First Amendment retaliation claim against Schrubbe and Larson. To state a First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in an activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). The plaintiff alleges that he engaged in an activity protected by the First Amendment (filing grievances), that Schrubbe delayed and denied him medical treatment, and that Larson initially refused to treat him at Schrubbe's direction—deprivations that might deter him from exercising that First Amendment right in the future. And he has alleged that he believes the reason that Schrubbe and Larson denied him medical treatment, or delayed it, was—

at least in part—because the plaintiff had filed a number of grievances, including one against Schrubbe.

III. **Conclusion**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** defendant Cathy Rietz.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent to the Wisconsin Department of Justice for service on defendants Grieser, Larson and Schrubbe.

The court further **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Grieser, Larson and Schrubbe shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $330.94 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff is transferred to another institution—county, state

or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will mail a copy of this order to the warden of Green Bay Correctional Institution.

The court **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, the court will require him to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that failure to timely file documents or take other court-ordered actions by the deadlines the court sets may result in the court dismissing his case for failure to prosecute.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The parties shall notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 13th day of June, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**