UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                            Case No. 17-cv-325-pp

JOHN GRIESER, *et al.*,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 31) AND SETTING NEW DEADLINES**

The plaintiff, representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. The court issued a screening order, allowing the plaintiff to proceed on the following claims: 1) an Eighth Amendment deliberate-indifference-to-medical-needs claim against defendant John Grieser; 2) an Eighth Amendment deliberate-indifference-to-medical-needs claim against defendant Donna Larson; and 3) First Amendment retaliation claims against defendants Belinda Schrubbe and Donna Larson. Dkt. No. 15. The defendants moved for partial summary judgment on the retaliation claims, arguing that the plaintiff had failed to exhaust his administrative remedies. Dkt. No. 31. The court will grant the defendants' motion for partial summary judgment and dismiss defendant Schrubbe from the case.

1

I.  **RELEVANT FACTS**

   A.  Overview

The plaintiff says that he suffers from a chronic back injury that periodically causes his back to go out, leaving him unable to move. Dkt. No. 1 at 3. On January 3, 2011, the plaintiff woke up in severe pain and was unable to move. Id. The plaintiff alleges that when he asked to go to the Health Services Unit (HSU), defendant Larson required the plaintiff to fill out a Health Services Request (HSR) and put it in the HSU mailbox, but because he couldn't get up, he couldn't follow that instruction. Id. According to the plaintiff, Larson refused to treat him until "they" received an HSR. Id.

The plaintiff states that he did not receive medical treatment from January 3, 2011 to January 11, 2011, when Larson finally saw him. Id. at 5. The plaintiff says that he wrote to HSU on January 12, 2011, complaining that he hadn't been seen between January 3 and January 11; he says that Larson received the complaint and forwarded it to Schrubbe, who responded that "according to security documentation the plaintiff claimed that he could not move or get out of bed but he was able to get up and take a shower." Id. The plaintiff believes that Shrubbe "responded to the plaintiff's complaint by removing him from the list of inmates scheduled to see the doctor." Id.

The plaintiff alleged that Shrubbe had a practice of retaliating against inmates who filed complaints against the HSU by delaying their treatment, and he alleged that Larson and defendant Rietz adopted that practice by failing to schedule him to see a doctor after a January 11, 2011 appointment, failing to

2

schedule him after a January 19, 2011 appointment, and failing to schedule him after the February 11, 2011 inquiry about his appointment. Id. at 7.

      B.      <u>The Plaintiff's Grievances Regarding Delay of Medical Treatment</u>

Between January 20, 2011 and February 22, 2011, the plaintiff filed five grievances related to the lack of medical treatment. Dkt. 33 at ¶¶3-7. The first one, received by the Inmate Complaint Examiner (ICE) on January 20, 2011, complained that on January 3 Grieser did not take the plaintiff to HSU like he requested but merely instructed him "to fill out a blue slip" and gave him a bag of ice. Dkt. No. 34-2 at 10. In the second one, received by the ICE on January 24, 2019, the plaintiff complained about Grieser's January 7 refusal to call HSU for his back pain. Dkt. No. 34-3 at 11. The plaintiff filed a third complaint, received by the ICE on January 24, complaining that the "2nd shift F-range officer" did not take him to HSU immediately to address his back pain, which he stated constituted a medical emergency. Dkt. No. 34-4 at 8. In this grievance, the plaintiff also acknowledged that he filed a "blue slip" on January 7 and had an appointment for January 11. Id. He filed a fourth complaint, received by the ICE on February 1, 2011, complaining that the "cell hall sgt." refused to call HSU or a "whiteshirt." Dkt. No. 34-5 at 8. In the fifth grievance, received by ICE on February 22, 2011, the plaintiff complained that HSU failed to schedule an appointment for him to see the doctor for his back pain, despite telling the plaintiff in the middle of January that they were going to schedule a doctor's appointment. Dkt. No. 34-6 at 10.

In his opposition brief, the plaintiff says that when he filed the fifth

grievance (the one received by the ICE on February 22, 2011), all he knew was that the nurse told him he'd be seen, and that it had taken several weeks. Dkt. No. 43 at 3. He says there could have been "legitimate reasons for the delay," such as an outbreak of something or an unexpected loss of HSU staff. Id. He says that even though he'd written to the HSU earlier in February, "it was not until he received the ICE report that he learned that the problem wasn't the long waitlist, it was that the appointment had never been scheduled." Id. He says that he "still" didn't have notice "that the defendants were responsible for this clerical 'error' or reason to suspect that HSU/Schrubbe had a practice of canceling appointments and treatments of inmates who complained about them." Id. According to the plaintiff, "[t]he defendants' subtle patterns of behind the scenes manipulation of records did not become apparent until the plaintiff had experienced several years worth of medication errors, cancellation of prescribed vitamins, snack bags, etc. and other instances of inexplicably being dropped from the waiting lists." Id.

A review of the plaintiff's Inmate Complaint History Report indicates that he never filed a complaint of retaliation against Larson and/or Schrubbe. Dkt. No. 34-1. He has filed two retaliation complaints, but both were against other officers for other incidents (WCI-2017-25156 and GBCI-2018-4933). Id. at 15-16.

**II. DISCUSSION**

  A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

    B.    Exhaustion of Administrative Remedies on Retaliation Claim

        1.    *Exhaustion Standard*

The Prison Litigation Reform Act provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court, and it produces a "useful administrative record" for the district court to rely on. See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved much faster by an agency than through litigation in federal court. Woodford, 548 U.S. at 89.

The Seventh Circuit "has taken a strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner

is required to "properly use the prison's grievance process prior to filing a case in federal court. Id. "If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. Id. (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."))

There are exceptions to the exhaustion rule. Generally, where the grievance procedure is not available to the inmate, the exhaustion rule does not apply. Ramirez v. Young, 906 F.3d 530, 535 (7th Cir. 2018). "Administrative remedies are available . . . if they are "'capable of use' to obtain 'some relief for the action complained of.'" Id. (quoting Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1859 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001))). This means that remedies are available only if the institution (1) notifies the prisoner of their existence and (2) communicates the available remedies and their related process "in a way reasonably likely to be understood." Id. The Supreme Court has outlined three examples of when administrative remedies are not available to inmates: "(1) prison officials are 'consistently unwilling to provide an relief to aggrieved inmates;' (2) the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart the use of the grievance process." Id. at 538 (quoting Ross 136 S.Ct. at 1859-60). This list is not exhaustive. Id.

In Wisconsin, to properly exhaust administrative remedies, inmates must file an offender complaint within fourteen calendar days of the event giving rise to the complaint. Wis. Admin. Code §§DOC 310.05, 310.08, 310.09(6). The ICE can accept late filings for good cause shown. Wis. Admin. Code §DOC 310.09(6). The ICE recommends action to a reviewing authority, who then either will dismiss or affirm the complaint. Wis. Admin. Code §§DOC 310.11, 310.12. If the prisoner is unhappy with the finding, he can appeal to the Corrections Complaint Examiner within ten days, who will recommend action to the Department of Corrections Secretary. Wis. Admin. Code §§310.13(1), (7); 310.14(2). If an inmate fails to properly complete each of these steps, he has not exhausted his administrative remedies. Pozo, 286 F.3d at 1025.

2.  *The Court's Analysis*

The plaintiff does not argue that he followed the administrative remedy process and filed a grievance complaining that Larson and Schrubbe retaliated against him. Instead, he argues that the administrative remedy process was unavailable to him. Dkt. No. 43 at 2-3. He says the process was "unavailable" because Larson and Schrubbe "used their positions as HSU staff and manager and ensured that the notation for a follow up appointment was not entered into the record, resulting in the plaintiff going weeks without medical attention." Id. He says that this is an example of prison administrators "thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," Ross, 136

7

S. Ct. at 1860, one of the three kinds of circumstances under which the Supreme Court has held that "an administrative remedy, although officially on the books, is not capable of use to obtain relief," Ross, 136 S. Ct. at 1859. Dkt. No. 43 at 2.

Essentially, the plaintiff argues that he did not find out until he "received the ICE report" that Larson and Schrubbe had subjected him to a long-running "subtle pattern" of denying him medical care. Id. at 3. It appears that he means the report about his fifth grievance—the one he signed on February 12, 2011. Dkt. No. 34-6 at 10. In that complaint, he stated the following:

> In the beginning of January my back went out on me. I went to HSU and was given Ibuprofen and bengay and put on sick cell. The nurse told me that if it still hurt on the following Monday to put in another slip. The next week I came back to HSU and saw a different nurse who told me that I was on the list to see the doctor but that she would also put me on the list to see the NP since it would be awhile for the doctor. I recently wrote to HSU and was told that no appointment had been scheduled.

Id. This grievance shows that as of February 12, 2011, the plaintiff was aware that while "a different nurse" had told him that he was on the list to see the doctor and that she'd put him on the list to see the nurse practitioner, he knew that no appointment had been scheduled. Yet the plaintiff said nothing about retaliation in that grievance. On April 11, 2011, the complaint examiner recommended dismissal of the grievance with modification, and the recommendation says that Schrubbe admitted to the complaint examiner that staff hadn't noticed that he wasn't scheduled for a follow-up until February 10, 2011. Id. at 2. So as of early April 2011, the plaintiff would have been aware

8

that Schrubbe had admitted that he wasn't scheduled for a follow-up. Yet despite the fact that the plaintiff filed four grievances between February 28 and May 31, 2011, not a single one of them mentioned retaliation. Dkt. No. 34-1. He complained about the fact that his razor had been deemed contraband, the fact that a corrections officer made a comment about him and the fact that a "legal route was inappropriately denied." Id. But there are no complaints about Larson and Schrubbe retaliating against him. The defendants provided the plaintiff's complaint history from November 29, 2006 through June 12, 2018—sixteen pages of complaints over twelve years—and the court cannot find any grievance post-February 2011 in which the plaintiff alleged that Larson and Schrubbe retaliate against him.

If, as the plaintiff alleges, he had not known about Larson and Schrubbe's alleged "manipulations"[1] at the time of the events in January and February 2011, he could have filed a retaliation grievance once he found out. Wis. Admin. Code §DOC 310.09(6) allows an ICE to accept a grievance filed over fourteen days from the event "for good cause shown." The plaintiff could have filed a grievance and explained that he hadn't known about the retaliation in time to file within the fourteen days. But he didn't do so. The first mention the plaintiff appears to have made of this retaliation theory was in this federal civil rights complaint, which he filed in March of 2017.

Nor has the plaintiff presented any evidence that Larson or Shrubbe took any action to prevent him from using the inmate complaint system. The

---

[1] The court makes no finding that Larson or Schrubbe "manipulated" anything.

plaintiff made liberal use of the system, as his history demonstrates.

The plaintiff failed to exhaust his administrative remedies regarding the retaliation claim against defendants Larson and Schrubbe. The court will grant summary judgment on that claim. Because this was the only claim on which the court allowed the plaintiff to proceed against defendant Schrubbe, the court also will dismiss her from the case.

The court notes that on March 13, 2019, the court extended the deadline for completing discovery to June 28, 2019, to allow the parties to identify defendant Grieser and conduct discovery regarding Grieser. Dkt. Nos. 28, 29. Larson and Schrubbe, however, filed this motion for partial summary judgment on March 28, 2019—three months before the discovery deadline— and on July 3, 2019, the court granted the parties request to stay proceedings pending this ruling, dkt. no. 48. The court will set a new discovery deadline and a new deadline for filing dispositive motions.

### III. CONCLUSION

The court **GRANTS** the defendants' motion for partial summary judgment. Dkt. No. 31.

The court **DISMISSES** the plaintiff's retaliation claims against defendants Donna Larson and Belinda Schrubbe.

The court **ORDERS** that defendant Belinda Shrubbe is **DISMISSED** as a defendant.

The court **ORDERS** that the parties must complete all discovery by the end of the day on **May 15, 2020**.

The court **ORDERS** that any party wishing to file dispositive motions must do so by the end of the day on **June 15, 2020**. A party opposing a dispositive motion must file a response within thirty days of service of the motion.

Dated in Milwaukee, Wisconsin this 11th day of February, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**